Filed 2/18/22  P. v. Greenberger CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE, Plaintiff and Respondent, v. KAREN GREENBERGER, Defendant and Appellant. | B310253 Los Angeles County Super. Ct. No. A975989 |

APPEAL from an order of the Superior Court of Los Angeles County, Curtis B. Rappé, Judge. Affirmed.

Brad Kaiserman, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Daniel C. Chang and David W. Williams, Deputy Attorneys General, for Plaintiff and Respondent.

## INTRODUCTION

In 1991, a jury convicted defendant and appellant Karen Greenberger of second-degree murder and aggravated kidnapping. In 2019, Greenberger filed a petition for resentencing under Penal Code section 1170.95.[1] The trial court appointed counsel, issued an order to show cause, and held an evidentiary hearing. It denied Greenberger relief, concluding she had personally planned the murder and could be convicted under current law as a direct aider and abettor or as a member of an uncharged conspiracy. On appeal, Greenberger raises two related claims. First, she contends that because the jury acquitted her of first-degree murder, the trial court was collaterally estopped from finding she could now be convicted of murder as an aider and abettor or conspirator. Second, she argues that in light of the jury's acquittal on her first-degree murder charge, the trial court's findings regarding aiding and abetting and conspiracy are unsupported by substantial evidence. We reject these contentions and affirm the trial court's order denying relief.

## PROCEDURAL BACKGROUND

As noted above, in 1991 a jury acquitted Greenberger of first-degree murder but convicted her of second-degree murder (§ 187, subd. (a)) and aggravated kidnapping resulting in death (§ 209, subd. (a)). On both counts, the jury found true the allegation that a principal was armed with a firearm during the offense (§ 12022, subd. (a)). The court sentenced Greenberger to life without the possibility of parole for the aggravated

---

[1] All undesignated statutory references are to the Penal Code.

kidnapping and 15 years to life for the murder, but stayed the sentence on the murder count under section 654. The court also imposed a one-year enhancement for the firearm allegation on the kidnapping count and stayed the one-year enhancement on the murder count.

In 2019, Greenberger filed a petition for resentencing under section 1170.95. The trial court appointed counsel, considered briefing from both parties, and issued an order to show cause. Following a hearing, the court denied the petition, finding the prosecution had proven beyond a reasonable doubt Greenberger was a direct aider and abettor to the murder and conspired to commit murder.

Greenberger timely appealed.


**FACTUAL BACKGROUND**

In its order denying Greenberger's petition, the trial court summarized the facts underlying her murder and kidnapping convictions as follows[2]:

> Greenberger hired and handsomely paid Mentzer and others to kidnap and kill ("do a hit" on) Roy Radin to help recover money and cocaine stolen from her by Tally Rogers and to further her potential interest in the Cotton Club production venture planned between Radin and Robert Evans and which she helped arrange. The evidence showed she arranged a

---

[2]    A much lengthier recitation of the facts appears in our opinion resolving Greenberger's direct appeal, *People v. Greenberger* (1997) 58 Cal.App.4th 298 (*Greenberger*). We use the trial court's summary because it focuses on the facts relevant to Greenberger's section 1170.95 petition.

fictitious din[n]er date with Radin, on the pretext of settling their differences, in order to lure him into the hands of Mentzer and Marti, armed with handguns, after which they would be driven by Lowe to the desert murder site. As another part of the overall plan, she attempted to divert Radin's personal assistant, Jonathan Lawson, and lure him to her car at her Beverly Hills apartment where Mentzer's cohorts, Carl John Plzak and Raja Korban, would kidnap and hold him and stay in contact with Mentzer, in order to cut off any contact between Lawson and Radin. That part failed when Lawson refused to go to her apartment. She had Lowe leave Radin's hotel to drive them to the supposed dinner location. At the same time, she coordinated this plan with another plan in which Mentzer, Marti, and Lowe would arrange to [pick up Radin in a limousine,] have the limousine waylaid en route, kidnap Radin at gunpoint, and drive to a desert area where Radin would be interrogated and killed during which time Greenberger would meet with a boyfriend Sol Besharat to establish an alibi during which time she would also make phone calls to solidify that alibi. During that drive, chauffeured by Lowe, Mentzer and Mar[t]i, armed with handguns, would enter the car and hold Radin hostage while Greenberger left in their car to meet with Plzak and Korban before her date with Besharat. After leaving the limousine, Greenberger then met with Plzak and "told Plzak that 'they' grabbed Radin and were on their way to the desert. [ ] When they departed, Greenberger told Plzak that she was going to set up an alibi and that he should not say he had seen her that night. (*Greenberger, supra,* at p. 319.) It was during this time that Radin was murdered. Greenberger made no attempt to help Radin such as notifying the police.

4

Further she repeatedly lied to Lawson about how she and Radin parted company that night en route to the dinner date. In preparation for this plan to kidnap and kill Radin, [Greenberger] put her house up for sale, and sent her son and his nanny to Florida. She left town with her cohorts the next day.

## DISCUSSION
### I.    Governing Law: SB 1437 and Section 1170.95

The Legislature enacted Senate Bill No. 1437 "to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f); accord, § 189, subd. (e); *People v. Lewis* (2021) 11 Cal.5th 952, 959 (*Lewis*).)

SB 1437 also added section 1170.95 to the Penal Code. (Stats. 2018, ch. 1015, § 4.) This section permits individuals who were convicted of felony murder or murder under a natural and probable consequences theory, but who could not be convicted of murder following SB 1437's changes to sections 188 and 189, to petition the sentencing court to vacate the conviction and resentence on any remaining counts. (§ 1170.95, subd. (a).) A petition for relief under section 1170.95 must include a declaration by the petitioner that he or she is eligible for relief under section 1170.95 based on all the requirements of subdivision (a), the superior court case number and year of the petitioner's conviction, and a request for appointment of counsel, should the petitioner seek appointment. (§ 1170.95, subd. (b)(1).)

5

Subdivision (c) of section 1170.95 provides: "The court shall review the petition and determine if the petitioner has made a prima facie showing that the petitioner falls within the provisions of this section. If the petitioner has requested counsel, the court shall appoint counsel to represent the petitioner. The prosecutor shall file and serve a response within 60 days of service of the petition and the petitioner may file and serve a reply within 30 days after the prosecutor response is served. These deadlines shall be extended for good cause. If the petitioner makes a prima facie showing that he or she is entitled to relief, the court shall issue an order to show cause." Subdivision (c) describes "only a single prima facie" stage of review. (*Lewis*, *supra*, 11 Cal.5th at p. 962.) Under subdivision (c), "a complying petition is filed; the court appoints counsel, if requested; the issue is briefed; and then the court makes one . . . prima facie determination." (*Lewis*, *supra*, at p. 966, fn. omitted.)

"If the trial court determines that a prima facie showing for relief has been made, the trial court issues an order to show cause, and then must hold a hearing 'to determine whether to vacate the murder conviction and to recall the sentence and resentence the petitioner on any remaining counts in the same manner as if the petitioner had not . . . previously been sentenced, provided that the new sentence, if any, is not greater than the initial sentence.' (§ 1170.95, subd. (d)(1).)" (*Lewis*, *supra*, 11 Cal.5th at p. 960.) At the hearing, the parties may rely on the record of conviction or present "new or additional evidence" to support their positions, and "the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner . . . . is ineligible for resentencing." (§ 1170.95, subd. (d)(3).)

6

## II. Greenberger's Collateral Estoppel Argument
### A. Applicable Legal Principles

Intent to kill for purposes of murder, also known as express malice, is shown when the assailant either desires the victim's death or knows to a substantial certainty that death will occur. (*People v. Smith* (2005) 37 Cal.4th 733, 739 (*Smith*); see § 188, subd. (a)(1).) Evidence of motive, although not required to establish intent to kill, is often probative of intent to kill. (*Smith*, *supra*, 37 Cal.4th at p. 741.) Intent to kill may be inferred from the defendant's acts and the circumstances of the crime. (*Ibid.*)

Guilt as a direct aider and abettor requires: (1) a crime committed by the direct perpetrator; (2) knowledge of the direct perpetrator's intent to commit the crime; (3) intent to assist in committing the crime; and (4) conduct that in fact assists in committing the crime. (*People v. Perez* (2005) 35 Cal.4th 1219, 1225 (*Perez*).) The defendant must not only know the direct perpetrator's intent, he or she must share that intent. (*People v. Beeman* (1984) 35 Cal.3d 547, 560.) "Senate Bill 1437 did not change accomplice liability for murder under direct aiding and abetting principles. [Citation.]" (*People v. Jenkins* (2021) 70 Cal.App.5th 924, 931 (*Jenkins*).) "'One who directly aids and abets another who commits murder is thus liable for murder under the new law just as he or she was liable under the old law.' [Citation.]" (*Ibid.*)

A defendant can be guilty of murder based on an uncharged conspiracy to commit the murder. (*People v. Valdez* (2012) 55 Cal.4th 82, 150.) Among the elements the prosecution must prove for conspiracy to commit murder is the element that the defendant intended to agree and did agree with the other participants to commit the murder. (CALCRIM No. 416; *People v.*

*Smothers* (2021) 66 Cal.App.5th 829, 870 (*Smothers*).) "The other elements for an uncharged conspiracy are: (2) at the time of the agreement, the defendant and the other member(s) of the conspiracy intended that one or more of them would commit the crime; (3) the defendant or the other member(s) of the conspiracy committed an overt act to accomplish the crime; and (4) the overt act was committed in California. [Citation.]" (*Id.* at p. 870, fn. 4; see CALCRIM No. 416.)

Collateral estoppel "stands for [the] extremely important principle in our adversary system of justice . . . . that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." (*Ashe v. Swenson* (1970) 397 U.S. 436, 443.) The doctrine of collateral estoppel "is embodied in the Fifth Amendment guarantee against double jeopardy." (*Id.* at p. 445.)

### B. Analysis

Greenberger contends that, in light of the jury's acquittal on her first-degree murder charge, and in the context of the facts of her case, the trial court was collaterally estopped from finding she aided and abetted or conspired to commit murder. Although Greenberger did not object in the trial court on the grounds she now raises on appeal, we exercise our discretion to address the merits of her argument. (See *People v. Williams* (1998) 17 Cal.4th 148, 161, fn. 6.)[3] Turning to the merits, we reject her contention.

---

[3] Because we exercise our discretion to reach the merits of Greenberger's argument, we need not address her alternative contention that counsel was ineffective in failing to object in the trial court.

The trial court instructed the jury using CALJIC No. 8.30. That instruction allowed the jury to convict Greenberger of murder based on an express malice theory without a finding of premeditation.[4] Thus, although the jury's acquittal of Greenberger's first-degree murder charge suggests it found she did not premeditate, the instructions given do not foreclose the possibility that the jury found Greenberger guilty of second-degree murder based on a finding of express malice. Indeed, there is nothing in the record that shows conclusively the jury based its finding of second-degree murder on the absence of intent to kill. Because the record does not definitively show the jury rejected the theory that Greenberger was guilty of express malice second-degree murder, the trial court was not collaterally estopped from finding she aided and abetted the murder of Radin with the intent to kill. (See *Jenkins*, *supra*, 70 Cal.App.5th at p. 931; § 189, subd. (e)(2) [murder liability may still be imposed on a person who aided and abetted murder with the intent to kill].)

Nor was the trial court collaterally estopped from finding Greenberger conspired to murder Radin. As mentioned above, that crime has the following elements: (1) the defendant intended to agree and did agree with the other participants to commit the murder; "(2) at the time of the agreement, the defendant and the other member(s) of the conspiracy intended that one or more of them would commit the [murder]; (3) the defendant or the other

---

[4]     The instruction provided: "Murder of the second degree is the unlawful killing of a human being with malice aforethought when there is manifested an intention unlawfully to kill a human being but the evidence is insufficient to establish deliberation and premeditation."

member(s) of the conspiracy committed an overt act to accomplish the [murder]; and (4) the overt act was committed in California. [Citation.]" (*Smothers*, *supra*, 66 Cal.App.5th at p. 870 & fn. 4.) The jury did not make any factual findings at Greenberger's trial that precluded the section 1170.95 court from finding these elements satisfied.[5]

### III. Greenberger's Substantial Evidence Argument

Greenberger next contends that, in light of the jury's acquittal on her first-degree murder charge, and in the context of the facts of her case, the trial court's findings that she aided and abetted or conspired to commit murder are unsupported by substantial evidence. (See *People v. Garrison* (2021) 73 Cal.App.5th 735, 747 [substantial evidence standard applies to review of trial court's factual determination of ineligibility under section 1170.95].) We disagree—the trial court's factual findings are plainly supported by substantial evidence.

For example, as the trial court recounted in its order, the prosecution presented ample evidence showing Greenberger orchestrated a complex plot to kill Radin. She hired the hitmen and coordinated the actual kidnapping and killing. In other words, the evidence demonstrated Greenberger (1) aided and abetted the murder with the intent to kill; and (2) conspired to commit murder. As discussed above, the record does not conclusively demonstrate the jury based its finding of second-degree murder on the absence of intent to kill. We therefore reject

---

[5] Having concluded the trial court's findings did not violate collateral estoppel, it follows logically that the court did not violate principles of double jeopardy or due process.

10

Greenberger's implicit contention that the trial court was barred from considering evidence that showed aiding and abetting with intent to kill and conspiracy to commit murder. In sum, the trial court's findings are supported by substantial evidence.[6]

---

[6] The trial court noted there was a split in authority on what standard trial courts should apply when making the factual determination that a defendant is ineligible for section 1170.95 relief, and the court concluded Greenberger was ineligible under both standards. Effective January 1, 2022, Senate Bill No. 775 (Stats 2021, ch. 551) amended section 1170.95 to resolve the split in authority. The amended statute clarifies: "A finding that there is substantial evidence to support a conviction for murder, attempted murder, or manslaughter is insufficient to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing." (§ 1170.95, subd. (d)(3).) The proper inquiry is whether the prosecution has sustained its burden of proving, "beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder under California law as amended by the changes to Section 188 or 189 made effective January 1, 2019." (§ 1170.95, subd. (d)(3).)

## DISPOSITION

The order denying Greenberger's section 1170.95 petition is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

CURREY, J.

We concur:

MANELLA, P.J.

WILLHITE, J.

12